1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

KIMERA LABS INC.,

                                    Plaintiff,

v.

RAJ JAYASHANKAR, et al.,

                                    Defendants.

Case No.: 21-cv-2137-MMA (DDL)

**ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS WITH
LEAVE TO AMEND**

[Doc. Nos. 40, 41]

Plaintiff Kimera Labs Inc. ("Plaintiff") brings this lawsuit against Defendants Raj Jayashankar ("Jayashankar"), Exocel Bio Inc. ("Exocel"), Alejandro Contreras ("Contreras"), Deb Hubers ("Hubers"), and Craig Evan Winkels ("Winkels") (collectively, "Defendants"), alleging misappropriation of Plaintiff's trade secrets, civil conspiracy to commit tortious interference with business relations, tortious interference with business relations, unjust enrichment, and unfair competition. *See* Doc. No. 31.  On June 6, 2022, Defendants Jayashankar, Exocel, Contreras, and Hubers filed a motion to dismiss Plaintiff's First Amended Complaint ("FAC") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. No. 40.  On June 17, 2022, Defendant Winkels filed a separate motion to dismiss Plaintiff's FAC for lack of personal jurisdiction

1

pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative, a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 41.  Plaintiff opposed both motions.  *See* Doc. Nos. 42, 45.  Defendants filed replies.  *See* Doc. Nos. 44, 47.  The Court found the matters suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. Nos. 46, 48.  For the reasons set forth below, the Court **GRANTS** Defendants' motions to dismiss with leave to amend.

## I. BACKGROUND[1]

Plaintiff, a corporation based in Florida, is "an FDA-registered tissue processing laboratory that specializes in scientific research focusing on exosome characterization and placental mesenchymal stem cell exosomes production and optimization."  FAC ¶¶ 1, 6.  Plaintiff invested heavily in developing a "proprietary method of exosome isolation" in order to produce XoGlo, "the first clinically available exosome product in the world." *Id.* ¶¶ 1, 27.  Plaintiff also spent "a substantial amount of time, expense, and effort" creating a customer list.  *Id.* ¶ 33.

Plaintiff required its employees to maintain confidentiality regarding its customer list and its process used to develop XoGlo, and included such requirements in their employment agreements.  *See id.* ¶ 17.  Dr. Melissa Selinger ("Dr. Selinger") was employed by Plaintiff from 2018 to 2019.  *Id.* ¶ 20.  Plaintiff alleges that Dr. Selinger and Defendants "brazenly and secretly engaged in corporate espionage" in order to establish Exocel, a business that "directly competes against [Plaintiff] in the exosome isolation industry using [Plaintiff]'s trade secrets and other confidential information to manufacture and sell" Exovex, a "competing extracellular vesicle/exosome product[]."

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint.  *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

*Id.* ¶ 2.  Dr. Selinger confidentially settled with Plaintiff and is not a party to this lawsuit. *Id.* ¶ 13.

Based on the foregoing, Plaintiff asserts the following six causes of action: misappropriation of Plaintiff's trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, against all Defendants (Counts I and II); civil conspiracy to commit tortious interference with business relations against Defendants Jayashankar, Contreras, Hubers, and Winkels (Count III); tortious interference with business relations against Defendants Jayashankar and Contreras (Count IV); unjust enrichment against Defendant Exocel (Count V); and unfair competition under California Business and Professions Code §§ 17200 *et seq.*, against Defendants Jayashankar, Contreras, and Exocel (Count VI).  *See generally* FAC.

## II. DISCUSSION

### A.   Motion to Dismiss for Lack of Personal Jurisdiction

The Court first addresses Defendant Winkels's motion to dismiss pursuant to Rule 12(b)(2).[2]  *See* Doc. No. 41.

#### 1.   Legal Standard

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Because "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," the court's inquiry centers on whether exercising jurisdiction comports with due process.  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG*, 571 U.S. at 125); *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").  Due process requires that the defendant "have certain minimum contacts" with the forum state "such that the

---

[2] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Depending on the strength of those contacts, there are two forms that personal jurisdiction may take: general and specific. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  Here, Plaintiff does not allege that Defendant Winkels is subject to general jurisdiction in California; instead, it alleges that specific jurisdiction exists. *See* FAC ¶ 11; Doc. No. 45 at 9–14.[3]  When a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for "each claim asserted against a defendant." *Picot*, 780 F.3d at 1211 (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)).  If personal jurisdiction exists over one claim, but not others, the court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same "common nucleus of operative facts" as the claim for which jurisdiction exists. *Id.* (quoting *Action Embroidery Corp.*, 368 F.3d at 1181).

A three-part test is used to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

---

[3] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff has the burden of proving the first two prongs.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  If he does so, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The exact form of jurisdictional inquiry depends on the nature of the claims at issue.  *Picot*, 780 F.3d at 1212.  For claims sounding in contract, courts generally apply a "purposeful availment" analysis and ask whether a defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Schwarzenegger*, 374 F.3d at 802 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  For claims sounding in tort, courts instead apply a "purposeful direction" test and look to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere.  *Id.* at 802–03.  Here, Plaintiff asserts tort claims against Defendant Winkels.  FAC ¶¶ 15–56.

In analyzing whether a court has specific personal jurisdiction over a tort claim, the Ninth Circuit applies the three-part "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984) (the "*Calder* test").  *Picot*, 780 F.3d at 1213–14 (citing *Schwarzenegger*, 374 F.3d at 803).  Under this test, a defendant purposefully directed his activities at the forum if he: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Id.* (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  In applying this test, courts must "look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  Thus, a "mere injury to a forum resident is not a sufficient connection to the forum."  *Id.* at 290.  Rather, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."  *Id.*

The meaning of the term "intentional act" in the court's jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the "intent to perform an actual, physical act in the real world." *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger*, 374 F.3d at 806). The second prong of the test, "express aiming," asks whether the defendant's allegedly tortious action was "expressly aimed at the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010). As to this prong, the exact nature of the court's analysis varies from case to case and "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807.

2.   *Analysis*

Here, Defendant Winkels only challenges the first prong of the test for specific jurisdiction. Doc. No. 41-1 at 7–11. Therefore, the Court focuses its analysis on the *Calder* test to determine whether Winkels purposefully directed his activities at California.

The Court first addresses the second factor of the *Calder* test: whether Defendant Winkels's alleged conduct was expressly aimed at California. Winkels argues that the Court lacks specific jurisdiction because Plaintiff "fails to allege any connection between Winkels and California, let alone in a 'meaningful way.'" *Id.* at 10. In response, Plaintiff generally argues that Winkels is subject to specific personal jurisdiction in California because "[t]he violations of law at issue in this lawsuit were conducted by Winkels within this Court's [Southern District of California] judicial jurisdiction." Doc. No. 45 at 12.

Plaintiff alleges that Defendants, including Winkels, conspired with Dr. Selinger "to help create a business [Exocel] that they intended to directly compete against [Plaintiff] by using [Plaintiff]'s [trade secrets]. Defendants, including Winkels, worked with Dr. Selinger to extract [Plaintiff]'s [trade secrets] and promote the Exocel Project to potential investors." FAC ¶¶ 22, 39. Plaintiff further contends that Defendants, including Winkels, misappropriated Plaintiff's trade secrets by accepting, disclosing to Exocel, retaining, and using Plaintiff's trade secrets. *Id.* ¶¶ 28, 44. According to

Plaintiff, Winkels "assisted with the planning for the competing company and conferred and conspired with Dr. Selinger to seal [Plaintiff's standard operating procedures] and other confidential information." *Id.* ¶ 53.  And Plaintiff maintains that Defendant Winkels aimed to profit from the conspiracy to steal from Plaintiff and use the stolen information to create and operate Exocel, a Delaware corporation with its principal place of business in San Diego County, California.  *Id.* ¶¶ 7, 55.

As an initial matter, many of the allegations listed above pertain to Defendants, collectively, and Plaintiff does not separate out each Defendants' actions in the challenged conduct.  This is improper.  *See Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 973 (S.D. Tex. 2018) ("[A] plaintiff must submit evidence supporting personal jurisdiction over each defendant, and cannot simply lump them all together") (citing *Calder*, 465 U.S. at 790) ("Each defendant's contacts with the forum State must be assessed individually.").

Plaintiff's claims against Defendant Winkels include two counts of misappropriation of Plaintiff's trade secrets in violation of the DTSA and one count of civil conspiracy to commit tortious interference with business relations (Counts I, II, and III).  As stated above, "[p]ersonal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp.*, 368 F.3d at 1180.  The only allegations in the FAC that refer to Defendant Winkels individually include Plaintiff's general assertions that "[t]his Court has personal jurisdiction over Winkels because the violations of law at issue in this lawsuit were conducted by Winkels within this Court's judicial district," FAC ¶ 11, "Winkels assisted the financing part of the competing business," *id*. ¶¶ 22, 39, and "Winkels assisted with planning for the competing company and conferred and conspired with Dr. Selinger to steal [Plaintiff's] [standard operating procedures] and other confidential information," *id.* ¶ 53.  Indeed, Plaintiff fails to provide specific allegations showing that Winkels's acts as to each count above were expressly aimed at California.  Plaintiff is a Florida corporation doing business in Florida.  FAC ¶ 6. Defendant Winkels (1) resided in Illinois during the years relevant to this lawsuit;

(2) currently resides in Ohio; (3) never resided in California; and (4) does not have any personal or professional connections to California.  Doc. No. 41-2 at 2.  Without more specific facts, the Court finds that Plaintiff has not met its burden of showing *how* Defendant Winkels's alleged conduct—misappropriating trade secrets and conspiring to interfere with the business relations of a Florida corporation doing business in Florida— was expressly aimed at California.  *See Professional's Choice Sports Medicine Prods., Inc. v. Hegeman*, No. 15-cv-2505-BAS (WVG), 2016 WL 1450704, at *4 (S.D. Cal. April 12, 2016) ("[A] plaintiff must point to contacts which demonstrate that the defendant '*expressly aimed* its tortious conduct at the forum.'").

Because Plaintiff has not satisfied the expressly aiming element of the *Calder* test, the Court need not address any of the other prongs because "[f]ailing to sufficiently plead any one of these three elements [from *Calder*] is fatal to Plaintiff's attempt to show personal jurisdiction."  *Rupert v. Bond,* 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014) (citing *Brayton Purcell LLP*, 606 F.3d at 1128–29).  As such, the Court declines to reach the remaining specific jurisdiction requirements, *i.e.*, whether Plaintiff's claim arises out of or relates to Defendant's forum-related activities and whether the exercise of jurisdiction would comport with fair play and substantial justice.

In sum, the Court **GRANTS** Defendant Winkels's motion to dismiss for lack of personal jurisdiction with leave to amend.[4]  *See McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003) (noting that in the event of a jurisdictional defect, dismissal without leave to amend is proper only if it is clear that the complaint could not be saved by any amendment).

---

[4] In light of the Court's determination that Defendant Winkels is entitled to dismissal for lack of personal jurisdiction, the Court need not reach his alternative motion to dismiss for failure to state a claim.

21-cv-2137-MMA (DDL)

**B.    Motion to Dismiss for Failure to State a Claim**

Next, the Court addresses the remaining Defendants' motion to dismiss pursuant to Rule 12(b)(6).  *See* Doc. No. 40.

*1.    Legal Standard*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6).  The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).  Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts.  *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  "A court may, however, consider certain materials— documents attached to the complaint, documents incorporated by reference in the

9

complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).  "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### 2.    Trade Secret Misappropriation

Because this Court's jurisdiction over the remaining Defendants is based on federal question jurisdiction, *see* FAC ¶ 3, the Court begins by addressing the sufficiency of Plaintiff's federal claims.[5]

Plaintiff's first and second causes of action are for trade secret misappropriation in violation of the DTSA.  *See* FAC ¶¶ 15–18.  Plaintiff alleges that Defendants misappropriated its "proprietary method of growing, harvesting, and isolating exosomes derived from placental mesenchymal stem cells for use in human therapeutic products" ("Kimera's Process") and its customer list.  FAC ¶ 16.  Defendants argue that these claims should be dismissed because Plaintiff does not allege ownership of its trade secrets with particularity and "fail[s] to put Defendants and the Court on notice of the boundaries of [Plaintiff]'s claims."  Doc. No. 40 at 18.  Defendants also argue that Plaintiff "fails to plausibly allege misappropriation."  *Id.* at 22–24.  In response, Plaintiff

---

[5] Defendants' first argument in its motion to dismiss is that Plaintiff's FAC fails to provide fair notice to Defendants because, among other things, the FAC is an improper "shotgun pleading."  Doc. No. 40 at 11–14.  Rather than analyze the FAC as a whole under these allegations, the Court instead analyzes the clarity and specificity of the allegations in its analysis of Plaintiff's individual causes of action.

asserts that it "plausibly alleges ownership of its trade secrets by sufficiently identifying them." Doc. No. 42 at 12.  In addition, Plaintiff argues that its "allegations, and all reasonable inferences that may be drawn from them, plausibly substantiate Defendants' knowledge that the information they obtained from Dr. Selinger was trade secret information." *Id.* at 19–23.

### a.   Applicable Law

To plead a trade secret misappropriation cause of action under the DTSA, a plaintiff must allege the following: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019) (quoting *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018)).  The DTSA provides for a private cause of action for owners of trade secrets that are misappropriated "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  The DTSA defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" so long as the owner (a) "has taken reasonable measures to keep such information secret" and (b) "derives independent economic value" from being secret.  18 U.S.C. § 1839(3). Under the DTSA "misappropriation" is the "(a) 'acquisition of a trade secret' by a person who knows or should know the secret was improperly acquired or (b) 'disclosure or use of a trade secret of another without express or implied consent.'"  *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *3 (N.D. Cal. Apr. 24, 2017) (quoting 18 U.S.C. § 1839(5)).  In sum, the DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Id.* at *4 (citing 18 U.S.C. § 1839(5)).

Defendants argue Plaintiff fails to allege its trade secrets with "sufficient particularity." Doc. No. 40 at 13. However, in applying the Rule 12(b)(6) standard to DTSA allegations, the Court applies Rule 8's general pleading standards, which require plausibility as opposed to particularity. Defendants cite to *Soil Retention Products, Inc. v. Brentwood Industries, Inc.*, 512 F. Supp. 3d 929, 965 (S.D. Cal. 2021), which applies the heightened pleading standard of "particularity" from the California Uniform Trade Secrets Act ("CUTSA"). Here, Plaintiff does not plead any claims under CUTSA, and the Court finds that the DTSA does not incorporate CUTSA's pleading standard requiring particularity. *See Physician's Surrogacy, Inc. v. German*, No. 17CV0718-MMA (WVG), 2017 WL 3622329, at *9 (S.D. Cal. Aug. 23, 2017) (citing *David Bohrer, Threatened Misappropriation of Trade Secrets: Making A Federal (DTSA) Case Out of It*, 33 Santa Clara High Tech. L.J. 506, 521 (2017)); *see also Power Integrations, Inc. v. De Lara*, No. 20-cv-410-MMA (MSB), 2020 WL 1467406, at *17 (S.D. Cal. Mar. 26, 2020) (applying a Rule 8 standard where there were only DTSA claims at issue); *but see AlterG, Inc.*, 388 F. Supp. 3d at 1144 n.1 (applying a Rule 9(b) standard). Although "elements of a trade secret misappropriation claim under the DTSA are substantially similar to those under older state statutes," such as CUTSA, *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018), the similarity pertains to the *substantive* elements and does not pertain to the *procedural* pleading standard. Thus, absent any explicit language in the DTSA requiring a heightened pleading standard or allegations of fraud or mistake, the Court finds that it must apply the general rules of pleading under Rule 8.

   b.   Ownership of Trade Secret

      i.   *Kimera's Process*

Defendants argue that as to Kimera's Process, Plaintiff only puts forth "surface allegations" and "fails to notify Defendants what about Kimera's Process actually has potential to be trade secret." Doc. No. 40 at 19–20. In response, Plaintiff argues that it "identified and described the Kimera Process with sufficient particularity to separate it

from matters of general knowledge in the trade and of special knowledge of those persons skilled in the trade and to permit Defendants to ascertain the boundaries within which it lies." Doc. No. 42 at 17.

As stated above, the Court must determine whether Plaintiff's pleading of its DTSA claims plausibly express "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2); *see also Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). The Court finds that Plaintiff has met this requirement as to the Kimera Process.

First, Plaintiff alleges the following paragraph pertaining to the Kimera Process:

Kimera developed an efficient, rapid, and scalable process of producing, on an industrial scale, clinically therapeutic exosome products for humans in a clinical setting, by using recombinant protein isolation methods combined with cellular therapeutic production processes (Kimera's Process). Kimera's Process is a trade secret consisting of a proprietary method of growing, harvesting, and isolating exosomes derived from placental mesenchymal stem cells for use in human therapeutic products. Kimera's Process involves increasing the quantity of exosomes in cell culture and harvesting and isolating the resulting exosome product in a manner that separates the target exosomes from other biological matter in a highly efficient and rapid method. Kimera's Process uses tools that are unique to its outcome and includes, but is not limited to, the following steps: collect conditioned medium, filter medium using a cell centric process, transfer isolate, process the resultant medium using a recombinant protein isolation method, resuspend isolate, obtain exosome concentration, adjust product concentration to Kimera's proprietary quality levels, refilter resuspended isolate, and transfer suspension to sterile vials to await quality control assessment. Kimera's Process is unique because: (1) the combination of recombinant protein isolation and cellular therapeutic production processes does not exist in any previous process of exosome isolation for clinical usage; (2) it requires the use of tools not used in any previous process of exosome isolation for clinical usage; and (3) the unique properties of large fat-based particles are not amenable to earlier published research methods of isolation. There is no reference to or understanding of Kimera's Process of exosome isolation in the clinical

exosome isolation industry, nor is Kimera's Process known to persons skilled in the clinical exosome isolation industry.

FAC ¶ 16.  Further, Plaintiff details the steps it has taken to ensure that the Kimera Process remains confidential:

> [Plaintiff] takes reasonable measures to maintain the secrecy of Kimera's Process, which include limiting access to employees that need to know, requiring employees to sign non-disclosure agreements as a condition of employment, and physical security measures, such as implementing and using passwords and locks on [Plaintiff]'s computers.

*Id.* ¶ 17.  Finally, Plaintiff contends that:

> Kimera's Process derives independent economic value from not being generally known to, or readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Nobody in the exosome isolation industry uses a process similar to Kimera's Process. Kimera's Process is the product of many years of research and development at substantial cost to [Plaintiff]. Kimera's Process is [Plaintiff]'s competitive advantage in the exosome isolation industry. A competitor who had knowledge of Kimera's Process without undergoing the time, effort, and expense incurred by [Plaintiff] to create the process would be at a significant advantage because that competitor would undercut [Plaintiff] in the marketplace.

*Id.* ¶ 18.  Based upon this, the Court finds that Plaintiff sufficiently alleges the requirements of a trade secret as defined by the DTSA, and that it "has taken reasonable measures" to keep such information secret.  18 U.S.C. § 1839(3).  In addition, the Court finds that Plaintiff's description of the Kimera Process is sufficient to place Defendants on notice of the trade secret in dispute.  Defendants argue that while Plaintiff's description of the Kimera Process is "perhaps exotic-sounding to someone unskilled in the exosome trade," the description in the FAC "is so commonplace in the exosome industry that the same information is publicly available as YouTube videos, published white papers, and chapters in college-level cell biology courses."  Doc. No. 40 at 19.

14

However, even if the Court considered these referenced materials, the Court finds Plaintiff's allegations sufficient to survive the instant motion to dismiss and that Defendants' argument is better suited for a motion for summary judgment.

Further, Plaintiff has plausibly pleaded that it "derives independent economic value" from its trade secret. *See* 18 U.S.C. § 1839(3); FAC ¶ 18. Plaintiff further bolsters this claim of economic value by alleging that Defendants used Plaintiff's secret information to develop a competing product in a relatively short period of time. *See, e.g.*, FAC ¶¶ 26–27, 29. Collectively, these allegations plausibly support the "independent economic value" requirement of § 1839(3). Therefore, the Court finds that Plaintiff plausibly alleges the trade secret element of its DTSA claim as to the Kimera Process under Rule 8 to survive a motion to dismiss.

### ii.    Customer List

Defendants also argue that Plaintiff does not plead its customer list with sufficient particularity. Doc. No. 40 at 21. However, as stated above, the pleading standard that applies to this case is the plausibility standard set forth in Rule 8, rather than the particularity standard articulated in Rule 9. *See Power Integrations, Inc.*, 2020 WL 1467406, at *17 ("In applying the Rule 12(b)(6) standard to DTSA allegations, the Court applies the general pleading standards under Rule 8, which require plausibility as opposed to particularity. . . .").

Plaintiff pleads that it has a customer list that is not generally known or readily ascertainable by competitors and the public. *See* FAC ¶ 33. Because courts have repeatedly held that customer lists can be considered protectable trade secrets, this Court finds that Plaintiff plausibly alleges the trade secret element of its DTSA claim under Rule 8 to survive a motion to dismiss. *See United States v. Nosal*, 844 F.3d 1024, 1043 (9th Cir. 2016) ("[C]ourts have deemed customer lists protectable trade secrets."); *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (finding a customer database has economic value because it "allows a competitor . . . to direct its sales efforts to those potential customers that are already using" a competing product); *Gemini*

21-cv-2137-MMA (DDL)

*Aluminum Corp. v. Cal. Custom Shapes*, *Inc.*, 95 Cal. App. 4th 1249, 1263 (2002) ("Customer lists and related information may constitute protectable trade secrets.").

                       c.    <u>Misappropriation of Trade Secret</u>

Defendants further argue that Plaintiff fails to adequately plead misappropriation. Doc. No. 40 at 22–24. Defendants contend that Plaintiff "does not allege, other than by conclusion, that any of the Defendants knew or had reason to know before the alleged use or disclosure of the purported trade secrets that the information was trade secret." *Id.* at 23. The Court agrees.

The DTSA permits a court to enjoin "any actual or threatened misappropriation." 18 U.S.C. § 1836(b)(3)(A)(i). Courts distinguish between direct trade secret misappropriation claims and indirect trade secret misappropriation claims, depending on whether a plaintiff alleges that a defendant obtained the trade secrets directly from the plaintiff or indirectly "from someone other than plaintiff." *See Heller v. Cepia, L.L.C.*, No. C 11-01146 JSW, 2012 WL 13572, at *6 (N.D. Cal. Jan. 4, 2012), *aff'd on different grounds*, 560 F. App'x 678 (9th Cir. 2014). Because Plaintiff alleges that Defendants acquired its trade secrets from Dr. Selinger, the Court assesses whether Plaintiff plausibly alleges indirect trade secret misappropriation.

Indirect misappropriation includes the disclosure or use of a trade secret of another when "at the time of disclosure or use," the person "knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B). Both state and federal courts in California have held that a plaintiff must prove more than a defendant's mere possession of trade secrets. *See, e.g.*, *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012); *Cent. Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 528 (2008).

1

2

Plaintiff pleads the following conduct:

3

4

5

6

7

8

9

Jayashankar, Contreras, Winkels, and Hubers knew at the time Dr. Selinger provided them Kimera Process's it was a trade secret that originated from and was owned by [Plaintiff]. Jayashankar, Contreras, Winkels, and Hubers also knew at the time that Dr. Selinger provided them with Kimera's Process that Dr. Selinger was breaching her duty of confidentiality to [Plaintiff] by disclosing the process. Despite their knowledge, Jayashankar, Contreras, and Hubers proceeded with establishing a competing company that would use Kimera's Process to create and sell therapeutic exosome products that would directly compete against [Plaintiff]'s therapeutic exosome products.

10

11

12

13

14

15

16

17

FAC ¶ 24; *see also id.* ¶ 41 (customer list).  These allegations are vague and conclusory, and merely demonstrate that Defendants may have possessed Plaintiff's alleged trade secrets.  Indeed, Plaintiff's allegations are devoid of any factual substantiation of Defendants' "knowledge" regarding the alleged trade secret information.  Because the Court cannot presume the transfer of trade secret information occurs simply because Defendants possess it, Plaintiff must satisfy its pleading burden by alleging *how* improper acquisition, disclosure, or use occurred or is threatened by *each* Defendant.  *See Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1027 (E.D. Cal. 2011).

18

19

Therefore, the Court finds that Plaintiff fails to allege enough facts to constitute actual or threatened misappropriation against all Defendants.

20

d.  <u>Conclusion</u>

21

22

23

Accordingly, because Plaintiff fails to allege facts sufficient to plausibly plead the misappropriation element of its DTSA claims, the Court **DISMISSES** Plaintiff's DTSA causes of action (Counts I and II) without prejudice.

24

*3.  Remaining State Law Claims*

25

26

27

Defendants seek to dismiss each of Plaintiff's remaining state law claims (Counts III through VI) on the ground that they are displaced by CUTSA.  Doc. No. 40 at 24–26. Plaintiff responds that its remaining claims "are not preempted by CUTSA because

28

21-cv-2137-MMA (DDL)

1  [Plaintiff] asserted its trade secret misappropriation claims under DTSA."  Doc. No. 42 at
2  23.

3       CUTSA is modeled on the Uniform Trade Secrets Act and codified in California
4  Civil Code § 3426 through § 3426.11.  It is comprehensive in its structure and breadth.
5  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939,
6  957 (2009); *accord Hat World, Inc. v. Kelly*, No. CIV. S–12–01591 LKK/EFB, 2012 WL
7  3283486, at *4 (E.D. Cal. Aug. 10, 2012).  CUTSA's provisions contain "'the definition
8  of misappropriation and trade secret, injunctive relief for actual or threatened
9  misappropriation, damages, attorney fees, methods for preserving the secrecy of trade
10 secrets, the limitations period, the effect of the title on other statutes or remedies,
11 statutory construction, severability,'" and other aspects of trade secrets law.  *K.C.*
12 *Multimedia, Inc.*, 171 Cal. App. 4th at 954 (quoting *AccuImage Diagnostics Corp. v.*
13 *Terarecon, Inc.*, 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003)) (describing Cal. Civ. Code
14 §§ 3426.1–.11).

15      CUTSA contains two clauses related to displacement:[6] "(a) [e]xcept as otherwise
16 expressly provided, this title does not supersede any statute relating to misappropriation
17 of a trade secret, or any statute otherwise regulating trade secrets . . . (b) [t]his title does
18 not affect (1) contractual remedies, whether or not based upon misappropriation of a trade
19 secret, (2) other civil remedies that are not based upon misappropriation of a trade secret,
20 or (3) criminal remedies, whether or not based upon misappropriation of a trade secret."
21 Cal. Civ. Code § 3426.7(a)–(b).  Moreover, "section 3426.7, subdivision (b), [displaces]
22 common law claims that are 'based on the same nucleus of facts as the misappropriation
23 of trade secrets claim for relief.'"  *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 958
24 (quoting *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal.
25 2005)).

26
27
28 [6] The Court uses the term "displacement."  Courts have also used "supersession" and "preemption" to
    describe CUTSA's effect on common law tort causes of action related to trade secret misappropriation.

"[A] statute supersedes common law when the legislature intends that the statute 'cover the entire subject or . . . occupy the field.'" *Agile Sourcing Partners, Inc. v. Dempsey*, No. EDCV 21-773-JGB (SPx), 2021 WL 4860693, at *7 (C.D. Cal. July 15, 2021) (citation omitted).  This Court agrees with other courts in this Circuit that have found that "CUTSA's 'comprehensive structure and breadth' . . . 'suggests a legislative intent to occupy the field.'" *Arthur J. Gallagher & Co. v. Tarantino*, No. 20-cv-05505-EMC, 2022 WL 4092673, at *15 (N.D. Cal. 2022) (quoting *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 957); *see also Deerpoint Group, Inc. v. Agrigenix, LLC*, 400 F. Supp. 3d 988, 995 (E.D. Cal. 2019); *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1158 (E.D. Cal. 2017); *Robert Half Intern., Inc. v. Ainsworth*, 68 F. Supp. 3d 1178, 1187 (S.D. Cal. 2014).  For this reason, the Court finds that "[t]he fact that Plaintiff has chosen not to plead a violation of CUTSA does not change the law's [potential] preemptive effect on its tort claims." *Agile Sourcing Partners, Inc.*, 2021 WL 4860693, at *8.

Plaintiff correctly states that CUTSA "[displaces] only common law claims that are based on misappropriation of a trade secret."  Doc. No. 42 at 26 (citation omitted).  Thus, the Court must now determine whether Plaintiff's claims in Counts III through VI are based on the same "nucleus of facts" as its trade secrets claims.  *Digital Envoy, Inc.*, 370 F. Supp. 2d at 1035.  Plaintiff argues that "[t]here is a material distinction between the wrongdoing alleged in [Plaintiff's state law] claims and the wrongdoing alleged in [its] trade secret claims."  Doc. No. 42 at 26.  The Court disagrees.

CUTSA displaces all claims "based upon the misappropriation of . . . confidential information, whether or not that information rises to the level of a trade secret." *Jardin v. Datallegro, Inc.*, No. 10-CV-2552-IEG WVG, 2011 WL 1375311, at *4 (S.D. Cal. Apr. 12, 2011) (citation omitted).  Counts III through VI are all essentially based on the same factual scenario alleged in its trade secrets claims: that Defendants received stolen "confidential information" from Dr. Selinger.  *See* FAC ¶¶ 51, 60, 70, 77.  Because Plaintiff's remaining claims all arise out of the alleged misappropriation of confidential

information, the Court finds that the claims are displaced by CUTSA.  Therefore, the Court **GRANTS** Defendants' motion and **DISMISSES** Counts III through VI.[7]

### 4.    *Leave to Amend*

Defendants argue the Court should dismiss the action without leave to amend because Plaintiff has already amended its allegations by way of the FAC, *see* Doc. No. 40 at 30, but until now, the Court has not ruled on the pleading sufficiency of Plaintiff's claims.  Though state law tort claims that are based on trade secret misappropriation are displaced by CUTSA, such claims are not displaced if they do not rely on the same nucleus of facts as the trade secret theft.  *Digital Envoy, Inc.*, 370 F. Supp. 2d at 1035.  For this reason, Plaintiff could conceivably cure the above deficiencies if given leave to amend.  Fed. R. Civ. P. 15; *Lopez*, 203 F.3d at 1127.  Therefore, the Court grants Plaintiff leave to amend.  *See Knappenberger*, 566 F.3d at 942.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions and **DISMISSES** Plaintiffs' six causes of action with leave to amend.  Plaintiff may file a second amended complaint on or before **November 10, 2022**.  Any amended complaint will be the operative pleading as to all Defendants, and therefore all Defendants must then respond within the time prescribed by Federal Rule of Civil Procedure 15.  Any defendants not named and any claim not re-alleged in the second amended complaint will be considered waived.  *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the

---

[7] Defendants also argue that Plaintiff fails to identify the state laws applicable to Counts III through V.  Doc. No. 40 at 27.  The Court agrees and finds this as an alternative basis to dismiss these claims.  *See Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2021 WL 2165796, at *12 (N.D. Cal. Feb. 8, 2016) ("[D]ue to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal.")  Further, to the extent Plaintiff sought to bring a standalone unjust enrichment claim under California law, California has "no cause of action for unjust enrichment; it is a 'general principle, underlying various legal doctrines and remedies, rather than a remedy itself.'" *Bosinger v. Belden CDT, Inc.*, 358 Fed. App'x. 812, 815 (9th Cir. 2009) (quoting *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003)).

original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**IT IS SO ORDERED**.

Dated: October 20, 2022

HON. MICHAEL M. ANELLO
United States District Judge

21-cv-2137-MMA (DDL)