UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMERA LABS INC.,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>RAJ JAYASHANKAR, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No. 21-cv-2137-MMA (DDL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 52] |

　　　Plaintiff Kimera Labs Inc. ("Plaintiff") brings this action against Defendants Raj Jayashankar, Exocel Bio Inc., Alejandro Contreras, and Deb Hubers (collectively, "Defendants"), alleging misappropriation of Plaintiff's trade secrets and unjust enrichment. *See* Doc. No. 51. On November 23, 2022, Defendants filed a motion to dismiss Plaintiff's Second Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 52. Plaintiff opposed the motion, Doc. No. 55, and Defendants replied, Doc. No. 56. The Court found the matters suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 57. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

1

# I. Background[1]

## A. Factual Background

Plaintiff, a corporation based in Florida, is "an FDA-registered tissue processing laboratory that specializes in scientific research focusing on exosome characterization and placental mesenchymal stem cell exosomes production and optimization." Doc. No. 51 (Second Amended Complaint, the "SAC") ¶¶ 1, 6. "Exosomes 'have broad application in the medical field,' and can, among other things, 'be used to help burn victims heal by regenerating skin.'" *See* Doc. No. 103 at 2 (citation omitted). Defendant Exocel Bio Inc. ("Exocel") is a competing Delaware corporation with its principal place of business in San Diego, California. SAC ¶ 7. Exocel was founded by Chief Operating Officer Raj Jayashankar, part-owner Alejandro Contreras, and scientific advisor Deb Hubers. *Id.* ¶¶ 8–10.

Plaintiff invested heavily in developing a "proprietary process method of exosome isolation" in order to produce XoGlo, "the first clinically available exosome product in the world." *Id.* ¶¶ 1, 32. Plaintiff also spent "a substantial amount of time, expense, and effort" creating its customer list. *Id.* ¶ 38.

Plaintiff employed Dr. Melissa Selinger ("Dr. Selinger") from March 2018 to October 2019. *Id.* ¶ 19. Plaintiff required its employees to maintain confidentiality regarding its customer list and its process (the "Kimera Process") used to develop XoGlo, and included such requirements in their employment agreements. *See id.* ¶¶ 16, 39. Plaintiff also required Dr. Selinger to "execute a non-disclosure agreement as part of her employment," which barred her from disclosing Plaintiff's trade secrets and its other confidential information, such as its standard operating procedures. *Id.* ¶¶ 19, 42, 63. However, Plaintiff alleges that Dr. Selinger and Defendants "brazenly and secretly

---

[1] Reviewing Defendants' motion to dismiss, the Court accepts as true all facts alleged in the SAC and construes them in the light most favorable to Plaintiff. *See Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017).

engaged in corporate espionage" in order to establish Exocel, a business that "directly competes against [Plaintiff]" in the exosome isolation industry using Plaintiff's "trade secrets and other confidential information [*i.e.*, Plaintiff's standard operating procedures] to manufacture and sell" Exovex, a "competing extracellular vesicle/exosome product[]." *Id.* ¶¶ 2, 32. Dr. Selinger confidentially settled with Plaintiff and is not a party to this lawsuit. *Id.* ¶ 12.

**B.     Procedural Background**

Plaintiff initiated this action on December 28, 2021. *See* Doc. No. 1. On April 7, 2022, Defendants filed a motion to dismiss. Doc. No. 23. On April 21, 2022, Plaintiff filed a motion for extension of time to amend the complaint as a matter of course. Doc. No. 26. The Court granted that motion on the same date. Doc. No. 28. On May 11, 2022, Plaintiff filed its First Amended Complaint ("FAC"). Doc. No. 31. As such, the Court denied Defendants' first motion to dismiss as moot. Doc. No. 33. Plaintiff alleged six causes of action for misappropriation of trade secrets under state and federal law in its FAC and named Defendants along with Craig Evan Winkels ("Winkels") as defendants. Doc. No. 31. On June 6, 2022, Defendants filed a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 40. On June 17, 2022, Winkels filed a separate motion to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Doc. No. 41.

On October 20, 2022, the Court granted Winkels's motion to dismiss for lack of personal jurisdiction and granted Defendants' motion to dismiss, both with leave to amend. *Id.*

On November 10, 2022, Plaintiff filed the operative SAC. Doc. No. 51. Plaintiff did not rename Winkels as a defendant, and as such, the action is currently proceeding against only Defendants Jayashankar, Contreras, Hubers, and Exocel. By way of the SAC, Plaintiff asserts the following three causes of action: misappropriation of Plaintiff's trade secrets—the Kimera Process and its customer list—in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, against all Defendants (Counts I and II);

and unjust enrichment against Jayashankar, Contreras, and Exocel (Count III).  *See generally* SAC.

On November 23, 2022, Defendants filed the instant motion to dismiss Plaintiff's SAC.[2]  Doc. No. 52.  The motion is now fully briefed and ripe for decision.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6).  The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).  Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

---

[2] While the instant motion to dismiss was pending, Plaintiff filed an emergency motion for temporary restraining order, which the Court subsequently converted to a motion for preliminary injunction.  Doc. Nos. 61, 69.  On March 30, 2023, the Court denied Plaintiff's motion.  Doc. No. 103.

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. DISCUSSION

**A.    Counts I and II: Trade Secret Misappropriation**

*1.    Applicable Law*

To plead a trade secret misappropriation cause of action under the DTSA, a plaintiff must allege the following: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019) (quoting *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018)). The DTSA provides for a private cause of action for owners of trade secrets that are misappropriated "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DTSA defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program

devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" so long as the owner (a) "has taken reasonable measures to keep such information secret" and (b) "derives independent economic value" from being secret.  18 U.S.C. § 1839(3).  Under the DTSA "misappropriation" is the "(a) 'acquisition of a trade secret' by a person who knows or should know the secret was improperly acquired or (b) 'disclosure or use of a trade secret of another without express or implied consent.'" *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *3 (N.D. Cal. Apr. 24, 2017) (quoting 18 U.S.C. § 1839(5)).  In sum, the DTSA "contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Id.* at *4 (citing 18 U.S.C. § 1839(5)).[3]

The Court previously found that Plaintiff satisfied its burden of pleading plausible ownership of trade secrets regarding the Kimera Process and its customer list.  Doc. 50 at 12, 15.  Therefore, only the misappropriation element of Plaintiff's DTSA claims is at issue.

    2.    *Analysis*

In its prior Order, the Court found that Plaintiff failed to adequately plead misappropriation because its allegations were "devoid of any factual substantiation of Defendants' knowledge regarding the alleged trade secret information."  Doc. No. 50 at 17.  Further the Court noted that "Plaintiff must satisfy its pleading burden by alleging *how* improper acquisition, disclosure, or use occurred or is threatened by *each* Defendant." *Id.* (emphasis in original) (internal citation omitted).  Regarding the SAC,

---

[3] In applying the Rule 12(b)(6) standard to DTSA allegations, as previously noted, the Court applies Rule 8's general pleading standards, which require plausibility as opposed to particularity.  *See* Doc. No. 50 at 12; *Power Integrations, Inc. v. De Lara*, No. 20-cv-410-MMA (MSB), 2020 WL 1467406, at *17 (S.D. Cal. Mar. 26, 2020) (applying a Rule 8 standard where DTSA claims at issue).

Defendants argue Plaintiff has again failed to meet this burden.  Doc. No. 52-1 at 6–11.  The Court disagrees.

The DTSA permits a court to enjoin "any actual or threatened misappropriation." 18 U.S.C. § 1836(b)(3)(A)(i).  Courts distinguish between direct trade secret misappropriation claims and indirect trade secret misappropriation claims, depending on whether a plaintiff alleges that a defendant obtained the trade secrets directly from the plaintiff or indirectly "from someone other than plaintiff." *See Heller v. Cepia, L.L.C.*, No. C 11-01146 JSW, 2012 WL 13572, at *6 (N.D. Cal. Jan. 4, 2012), *aff'd on different grounds*, 560 F. App'x 678 (9th Cir. 2014).  Because Plaintiff alleges again in its SAC that Defendants acquired its trade secrets from Dr. Selinger, the Court assesses whether Plaintiff plausibly alleges indirect trade secret misappropriation.

Indirect misappropriation includes the disclosure or use of a trade secret of another when "at the time of disclosure or use," the person "knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B).  Both state and federal courts in California have held that a plaintiff must prove more than a defendant's mere possession of trade secrets.  *See, e.g.*, *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012); *Cent. Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 528 (2008).

Here, Plaintiff now includes specific allegations describing Dr. Selinger's interactions with each Defendant.  Plaintiff alleges Dr. Selinger had informed Defendants that she executed a non-disclosure agreement and was still employed by Plaintiff when Defendants acquired Plaintiff's trade secrets from Dr. Selinger.  SAC ¶¶ 20, 44.  Plaintiff alleges facts that, if proven, show: (1) Dr. Selinger, as a former employee of Plaintiff, had access to trade secret information protected by a non-disclosure agreement; (2) those trade secrets include Plaintiff's Kimera Process and customer list; (3) Dr. Selinger was involved in discussions with Defendants about creating a competing business and product; and (4) Dr. Selinger improperly provided Defendants with access to Plaintiff's

confidential trade secrets at Defendants' request and inducement. *See generally* SAC. In *E. & J. Gallo Winery v. Instituut Voor Landbouw—En Visserijonderzoek*, the district court held that allegations of circumstantial similarities in corporate practices were sufficient to plead misappropriation when accompanied by allegations of "exactly how defendants improperly obtained the alleged trade secret," including that the improper access was given pursuant to a non-disclosure agreement. *See* No. 17-cv-00808-DAD-EOG, 2018 WL 2463869, at *7 (E.D. Cal. 2018). Thus, by providing the Court with "exactly how Defendants improperly obtained . . . the alleged trade secret[s]," Plaintiff has plausibly pleaded trade secret misappropriation. *Autodesk, Inc. v. ZWCAD Software Co.*, No. 14-cv-01409-EJD, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015) (internal quotation marks and citation omitted). Moreover, this Court finds that expecting Plaintiff to provide exactly how Defendants are unlawfully using Plaintiff's trade secrets would be unreasonable at this stage of the litigation. *See id.* at *1 ("[A]s discovery has not yet commenced, it would be unreasonable to require a plaintiff to demonstrate the precise ways in which Defendants may have used their trade secrets, given that Defendants are the only ones who possess such information.") (internal quotations omitted).

Therefore, the Court finds that Plaintiff has now adequately pleaded trade secret misappropriation under DTSA. Accordingly, the Court **DENIES** Defendants' motion to dismiss as to Counts I and II.

**B.     Count III: Unjust Enrichment**

Before proceeding to the merits, the Court addresses which law applies to Plaintiff's common law claim for unjust enrichment. Defendants argue that Plaintiff's unjust enrichment claim is displaced by the California Uniform Trade Secrets Act ("CUSTA").[4] Doc. No. 52-1 at 4–6. Plaintiff responds that Florida's Uniform Trade Secrets Act ("FUTSA") should apply. Doc. No. at 55 at 18–20. Defendants reply that no

---

[4] The Court uses the term "displacement." Courts have also used "supersession" and "preemption" to describe CUTSA's effect on common law tort causes of action related to trade secret misappropriation.

choice of law analysis is necessary when both laws produce the same outcome.  Doc. No. 56 at 2–3.  Although the Court agrees that the choice of law does not change the substantive displacement analysis, it will apply CUTSA to Plaintiff's unjust enrichment claim for the reasons stated below.

In California, the test for assessing whether California law or non-forum law should apply requires a three-step analysis: first, the court examines the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction; second, if the laws do differ, the court must determine whether a "true conflict" exists in that each of the relevant jurisdictions has an interest in having its law applied; and third, if a true conflict exists, the court must determine which forum's law would be most impaired if its laws were not applied.  *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 821–22 (N.D. Cal. 2011); *Parrish v. National Football League Players, Inc.*, No. 07-cv-00943-WHA, 2007 WL 1624601, at *3 (N.D. Cal. June 4, 2007) ("When there is no true conflict of laws, the forum may apply its own laws."); *Aldrich v. National Collegiate Athletic Association*, 484 F. Supp. 3d 779, 797 (N.D. Cal. 2020) (same).

Plaintiff argues that CUTSA and FUTSA conflict because "CUTSA preempts misappropriation claims based on confidential information whereas FUTSA does not."  Doc. No. 55 at 19.  Not so.  As Defendants correctly highlight, "the majority position in Florida is that FUTSA preempts all extracontractual claims based on misappropriation of confidential information, even where such confidential information does not rise to the level of 'trade secret,' unless there is a 'material distinction' underlying the purported wrongdoing."  Doc. No. 56 at 3; *compare Jardin v. Datallegro, Inc.*, No. 10-CV-2552-IEG-WVG, 2011 WL 1375311, at *4 (S.D. Cal. Apr. 12, 2011) (finding CUTSA displaces all claims "based upon the misappropriation of . . . confidential information, whether or not that information rises to the level of a trade secret"), *with Am. Registry, LLC v. Hanaw*, No. 13-CV-352-FTM-29CM, 2014 WL 12606501, at *6 (M.D. Fla. July 16, 2014) (collecting cases and stating the majority position that "FUTSA preempts all

non-contract claims based on the misappropriation of confidential and/or commercially valuable information even if the information does not constitute a trade secret under the FUTSA"), *and Mile High Healthcare Analytics, LLC v. Med. Care Consortium Inc.*, No. 18-CV-22374, 2020 WL 9460325, at *12 (S.D. Fla. July 29, 2020) (same). Therefore, the Court concludes that there is no true conflict, and will apply California state law. *See Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1078 (N.D. Cal. 2020) ("The first step in [the] analysis asks whether California law and the law of another state conflict. If there is no conflict, then California law applies."). Accordingly, the Court again looks to CUTSA to decide whether Plaintiff's unjust enrichment claim is displaced.

      Noting that CUTSA "occup[ied] the field" in California and "[t]he fact that Plaintiff [chose] not to plead a violation of CUTSA [did] not change the law's [potential] preemptive effect on its [common law] claims," the Court previously found Plaintiff's common law claims, including its claim for unjust enrichment, were displaced because they were "all essentially based on the same factual scenario alleged in its trade secrets claims: that Defendants received stolen 'confidential information' from Dr. Selinger." *See* Doc. No. 50 at 19 (internal citations omitted). Plaintiff's allegations in its SAC do not allege any new facts that provide a meaningful distinction between the wrongdoing alleged in Plaintiff's trade secret claims and that in its unjust enrichment claim. In its opposition, Plaintiff argues that its unjust enrichment claim should proceed because it is only based on Defendants' theft of Plaintiff's standard operating procedures ("SOPs"), which "are different from the Kimera Process and customer list." Doc. No. 55 at 24. However, Plaintiff's allegations underlying its unjust enrichment claim are clearly based on the same nucleus of facts underlying its DTSA claims.[5] This is because in each claim, Plaintiff alleges that Dr. Selinger was subject to a non-disclosure agreement which barred

---

[5] As stated in the Court's previous Order, CUTSA displaces common law claims, such as unjust enrichment, which are "based on the same nucleus of facts" as claims for trade secret misappropriation. *See* Doc. No. 50 at 18 (citing *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005).

her from disclosing Plaintiff's trade secrets and its SOPs. *See* SAC ¶¶ 19, 42, 63. Therefore, Dr. Selinger's breach of her non-disclosure agreement was the mechanism by which Defendants allegedly misappropriated Plaintiff's trade secrets and stole its SOPs.

Accordingly, because Plaintiff's claim for unjust enrichment arises out of the alleged misappropriation of confidential information, the Court finds it displaced by CUTSA. *Jardin*, 2011 WL 1375311, at *4. Therefore, the Court **GRANTS** Defendants' motion as to Plaintiff's unjust enrichment claim and **DISMISSES** Count III.

### C. Leave to Amend

Here, Plaintiff does not request leave to amend, and further amendment would not change the displacement analysis. Accordingly, leave to amend is **DENIED**. *See Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 20-cv-06846-EJD, 2021 WL 3042616, at *5 (N.D. Cal. July 19, 2021) (denying leave to amend as futile in light of CUTSA displacement).

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. Accordingly, Defendants' motion to dismiss is **GRANTED** without leave to amend as to Plaintiff's unjust enrichment claim and **DENIED** as to Plaintiff's DTSA claims. Defendants shall file an answer to the DTSA claims in Plaintiff's SAC no later than **May 22, 2023**.

**IT IS SO ORDERED**.

Dated: April 19, 2023

HON. MICHAEL M. ANELLO
United States District Judge