UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KIMERA LABS INC,

Plaintiff,

v.

EXOCEL BIO INC., et al.,

Defendants.

Case No.:  21-cv-2137-MMA-DDL

**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE RE PLAINTIFF'S RULE 30(b)(6) DEPOSITION OF DEFENDANT EXOCEL BIO**

**[Dkt. No. 300]**

**I.**

**INTRODUCTION**

Plaintiff has noticed the deposition of defendant Exocel Bio pursuant to Federal Rule of Civil Procedure 30(b)(6).  The deposition notice contains 85 topics, and Exocel Bio objects to certain of those topics.  The parties' Joint Motion contains their respective positions regarding the disputed topics.  The Court held a motion hearing on August 12, 2024.

/ / /

/ / /

## II.

## DISCUSSION

The Federal Rules of Civil Procedure permit a broad scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "When it comes to proportionality, courts consider six factors, including the importance of the issues at stake in the action, the parties' relative access to relevant information, the parties' resources, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Adamson v. Pierce Cnty.*, No. 3:21-CV-05592-TMC, 2023 WL 7280742, at *3 (W.D. Wash. Nov. 3, 2023).

Rule 30(b)(6) "requires an organization subject to proper notice to produce a witness who can answer questions about the subject matter in the deposition notice." *Guinnane v. Dobbins*, 479 F. Supp. 3d 989, 994 (D. Mont. 2020). "A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity." *SF 2402 LLC v. B.F.B., Inc.*, No. 21-CV-906-GPC-DDL, 2023 WL 116338, at *1 (S.D. Cal. Jan. 5, 2023) (citation omitted).

Rule 30(b)(6) "imposes reciprocal obligations on proponent and deponent: the proponent must specify which subject matters it intends to inquire into, and the deponent must take affirmative steps to learn about those topics." *Preservation Techs. LLC v. MindGeek USA, Inc.*, No. 2:17-cv-08906-DOC-JPR, 2020 WL 10965163, at *2 (C.D. Cal. Oct. 19, 2020). The party noticing the deposition must describe "with reasonable particularity" the matters upon which the organization will be asked to testify. Fed.R.Civ.P. 30(b)(6). For Rule 30(b)(6) to "effectively function, the requesting party must take care to designate, with *painstaking specificity*, the particular subject areas that

are intended to be questioned, and that are relevant to the issues in dispute." *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015) (emphasis in original) (citation omitted).

"While a corporation must make a good faith effort to prepare a Rule 30(b)(6) witness to fully and unevasively answer questions about the designated subject matter . . . that task becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand." *Pongsai v. American Express Co.*, 2020 WL 5356711, at \*2 (C.D. Cal. June 29, 2020) (citation omitted). "Rule 30(b)(6) does not permit burdening the responding party with production and preparation of a witness on every facet of the litigation." *Id.* Similarly, "[d]eponents under Rule 30(b)(6) must be prepared and knowledgeable, but they need not be subjected to a memory contest." *The Icon At Panorama, LLC v. Sw. Reg'l Council of Carpenters*, No. 2:19-CV-00181 CBM (MRWX), 2024 WL 2208100, at \*4 (C.D. Cal. May 7, 2024) (citation omitted).

The attached chart includes the parties' chart submitted with their Joint Motion with an additional column indicating whether the Court overrules or sustains Exocel Bio's objections to the disputed topics. Three points warrant clarification:

First, as reflected in the chart, the Court construes the topics as modified to include language added as a result of the parties' meet and confer efforts.

Second, the deposition testimony shall be limited to information known to Exocel Bio at the time of its formation and thereafter.

Third, the overruling of Exocel Bio's objections to certain topics does not thereby authorize Plaintiff to ask any conceivable question on those topics. For example, Topic No. 2 is "[t]he preliminary research Exocel performed before it created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes regarding advanced therapies for cosmetic issues, including the publications referenced and dates the research was performed." Inquiry into research performed by Exocel Bio regarding the manufacture of exosomes generally is permissible. However, to the extent Plaintiff seeks testimony regarding every publication referenced by

Exocel Bio and each date that Exocel Bio performed research, that would seek irrelevant information and raises concerns of overbreadth and proportionality.  The same concerns exist with respect to other topics (*e.g.*, Topic Nos. 4, 5, 8, 9, 10, 11, 12, 15, 16, 19, 20, 21, 23 and 25), and this Order does not preclude Exocel Bio from interposing appropriate objections to questions on these topics that seek information beyond what a reasonably prepared designee should be expected to know.

With the foregoing in mind, the Court rules on the disputed topics as follows:

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
| --- | --- |
| 1. The initial intended therapeutic or clinical purposes of Exovex. | No objection. |
| 2. The preliminary research Exocel performed before it created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes regarding advanced therapies for cosmetic issues, including the publications referenced and dates the research was performed. | Overruled as to the general topic of research performed by Exocel Bio regarding the manufacture of exosomes. |
| 3. All exosome related product lines Exocel considered before choosing to manufacture Exovex. | No objection. |
| 4. The research Exocel performed before it created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes regarding which specialized exosome to produce, and which brand of exosome would be effective for the intended use, including the publications referenced and the Bates' numbers of each. | Overruled as to the general topic of research performed by Exocel Bio regarding the manufacture of exosomes. |
| 5. The inspirations, deliberations, considerations, research, and experiments that caused Exocel to champion, or otherwise | Overruled as to the general topic of why Exocel Bio decided to start a business "concerning therapies for |

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| endeavor to start, a business concerning therapies for cosmetic issues. | cosmetic issues." |
| 6. The inspirations, deliberations, considerations, research, and experiments before Exocel created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes that caused Exocel to use purified biologically active exosomes for the treatment of cosmetic issues. | Overruled as to the general topic of why Exocel Bio used "purified biologically active exosomes for the treatment of cosmetic issues." |
| 7. How Exocel determined that utilization of exosomes was better suited to treat cosmetic issues as opposed to other already exiting treatments on the market before Exocel created its Process for manufacturing exosomes and during the period Exocel initially created its Process for Manufacturing. | Overruled. |
| 8. The inspirations, deliberations, considerations, research, and experiments Exocel employed to create a Process for manufacturing exosomes regarding the pathologies responsible for the relevant cosmetic issues that caused Exocel to consider what particular brand of exosome might be efficacious. | Overruled as to the general topic of Exocel Bio's consideration of "what particular brand of exosome might be efficacious." |
| 9. The inspirations, deliberations, considerations, research, and experiments Exocel employed to determine whether to use exosomes derived from human cells or from animal cells when Exocel created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes. | Overruled as to the general topic of how Exocel Bio "determine[d] whether to use exosomes derived from human cells or from animal cells." As discussed at the August 12 hearing, the parties shall meet and confer in advance of the deposition regarding this topic. |
| 10.The inspirations, deliberations, research, and experiments Exocel considered when | Overruled as to the general topic of how Exocel Bio "determine[d] |

21-cv-2137-MMA-DDL

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| determining whether to use stem cells or mature or differentiated cells to produce exosomes when Exocel created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes. | whether to use stem cells or mature or differentiated cells to produce exosomes." |
| 11. The inspirations, deliberations, considerations, research, and experiments Exocel used to determine what kinds of stem cells to use when Exocel created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes. | Overruled as to the general topic of how Exocel Bio "determine[d] what kinds of stem cells to use." |
| 12. The inspirations, deliberations, considerations, research, and experiments Exocel used to determine how to procure said stem cells when Exocel created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes. | Overruled as to the general topic of how Exocel Bio "determine[d] how to procure said stem cells." |
| 13. Where the materials used to create the Exocel Process are maintained. | No objection. |
| 14. The reasons why Exocel hired a Contract Manufacturing Organization (CMO) and the decisions that led Exocel to choosing Cell Applications, Inc. as its CMO. | No objection. |
| 15. The inspirations, deliberations, considerations, research, and experiments that enabled Exocel to conceptualize a purification protocol that could retain the biological activity of the requisite exosomes when Exocel created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes. | Overruled as to the general topic of how Exocel Bio "conceptualized a purification protocol." As discussed at the August 12 hearing, the parties shall meet and confer in advance of the deposition regarding this topic. |

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| 16.    The research Exocel performed to create Exocel's Process to manufacture exosomes that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers. | Overruled as to the general topic of research conducted by Exocel Bio to create its process to manufacture exosomes. |
| 17.    How Exocel determined the correct recommended dose for Exovex. | No objection. |
| 18.    The individuals and entities that created, or contributed to the creation of, Exocel's Process to manufacture exosomes in 2019. | No objections. |
| 19.    Exocel's Process for manufacturing exosomes and conditioned mediums that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers. | Overruled as to the general topic of Exocel Bio's process for manufacturing exosomes. |
| 20.    Each component of the Process Exocel uses to manufacture exosomes and conditioned mediums and how those components interact with one another that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers. | Sustained as duplicative of Topic No. 19. |
| 21.    How Exocel developed each component of the Process Exocel uses to manufacture exosomes and conditioned mediums that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers | Sustained as duplicative of Topic No. 19. |
| 22.    Why Exocel decided to execute each step or component of the Exocel Process in the manner that it selected that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers. | Sustained as seeking irrelevant information and as overbroad and not proportional to the needs of the case. |
| 23.    How Exocel's Process for manufacturing exosomes and conditioned mediums evolved and was modified from March 1, 2020 through present date that is within the scope of the | Overruled as to the general topic of how Exocel Bio's exosome manufacturing process changed from March 1, 2020 to the present. |

7

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| trade secret Processes identified in Kimera's interrogatory answers. | |
| 24. The origins of Exocel's Process for selecting tissue or cultured cells used for manufacturing exosomes and conditioned mediums. | No objection. |
| 25. How Exocel developed precursor and experimental processes used, or intended to be used, to manufacture exosomes and conditioned mediums before Exocel created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes. | Overruled as to the general topic of development of precursor and experimental processes. As discussed at the August 12 hearing, the parties shall meet and confer in advance of the deposition regarding this topic. |
| 26. The precursor and experimental processes Exocel used, or intended to use, to generate specific stem cell lines from human tissue, to maintain the stem cell state, to enable the replication of stem cells, to induce stem cells to secrete the requisite active exosomes, to isolate conditioned media, to purify active exosomes from conditioned media, to ensure that the final exosome preparation is suitable for clinical application and maintains a useful shelf life before Exocel created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes. | Sustained as seeking irrelevant information and as overbroad and not proportional to the needs of the case. |
| 27. How the components of the precursor and experimental process(es) interacted with one another and the reasons why each component was executed in the chosen manner before Exocel created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes. | Sustained as duplicative of topic 25. |
| 28. The time, effort, and expense Exocel spent | Overruled. |

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| developing its process for manufacturing exosomes and conditioned mediums from inception through its first commercial sale. | |
| 29. The time, effort, and expense Exocel spent developing, modifying, and optimizing its Process for manufacturing exosomes and conditioned mediums. | Overruled. |
| 30. The information, documents, and sources Exocel used to develop its Process for manufacturing exosomes and conditioned mediums that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers. | No objection. |
| 31. The information, documents, and sources Exocel considered but did not use to develop its Process for manufacturing exosomes and conditioned mediums before Exocel created its Process for manufacturing exosomes and during the period Exocel initially created its Process for manufacturing exosomes. | No objection. |
| 32. The public sources and information Exocel used to develop its Process for manufacturing exosomes and conditioned mediums that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers. | No objection. |
| 33. The information Exocel obtained (directly or indirectly) from Kimera that was reviewed, considered, or used to develop Exocel's Process for making exosomes and conditioned mediums. | No objection. |
| 34. The information Exocel obtained (directly or indirectly) from Melissa Selinger that was reviewed, considered, or used to develop | No objection. |

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| Exocel's Process for making exosomes and conditioned mediums. | |
| 35. The information Exocel obtained (directly or indirectly) from Duncan Ross that was reviewed, considered, or used to develop Exocel's Process for making exosomes and conditioned mediums. | No objection. |
| 36. The reasons Exocel came to possess Kimera's, Duncan Ross's, and Melissa Selinger's information relating to manufacturing exosomes and conditioned mediums. | No objection. |
| 37. How Exocel determined which stem cells would be best to use to produce active exosomes (or conditioned mediums) suitable for the treatment of cosmetic issues that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers. | No objection. |
| 38. For area of inquiry 37, how Exocel determined the best source(s) for procuring placental tissue. | No objection. |
| 39. How Exocel learned the technique(s) it uses for isolating stem cells from other populations. | No objection. |
| 40. How Exocel learned the technique(s) it uses for growing stem cells and maintaining them in a stem cell state. | No objection. |
| 41. The basis for Exocel's knowledge about how and when to induce stem cells to secrete active exosomes. | No objection. |
| 42. How Exocel learned that roller bottles would maximize the secretion of biologically active exosomes. | No objection. |

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| 43.  How Exocel learned the technique(s) it uses for efficiently removing conditioned media from stem cells while maintaining the biological activity of the exosomes. | No objection. |
| 44.  How Exocel learned the technique(s) it uses for purifying active exosomes from conditioned media and retaining the biological activity. | No objection. |
| 45. How Exocel learned the technique(s) it uses for formulating the final preparation of exosomes (and conditioned mediums) so that the exosomes (and conditioned mediums) are suitable for clinical applications and exhibit a useful shelf life. | No objection. |
| 46. The origins and author(s) of Exocel's written protocols and procedures for the Process it uses to manufacture exosomes and conditioned mediums. | No objection. |
| 47. How Exocel separates exosomes (and conditioned mediums) from stem cells that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers. | No objection. |
| 48. How Exocel created a mechanism for incubating stem cells that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers. | No objection. |
| 49. How Exocel selected its vendors for providing reagents or independent assays needed to manufacture exosomes and conditioned mediums. | No objection. |
| 50.  The origins of Exocel's customer list. | No objection. |
| 51.  How Exocel developed its customer list. | No objection. |
| 52. How Exocel developed its Process for | No objection. |

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| manufacturing exosomes and conditioned mediums in less than a year. | |
| 53. Identification of Exocel's past and present outside laboratories, vendors, companies, and CMOs used to manufacture, or help manufacture, Exocel's exosomes and conditioned mediums that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers. | No objection. |
| 54. The information Exocel disclosed to its outside laboratories, vendors, companies, and CMOs that is/was needed to manufacture, or help manufacture, exosomes and conditioned mediums for Exocel that is within the scope of the trade secret Processes identified in Kimera's interrogatory answers. | Overruled as to the general topic of information disclosed by Exocel Bio to third parties regarding the manufacture of exosomes and conditioned mediums for Exocel Bio. |
| 55. Exocel's annual sales, revenues, expenses, and profits resulting from its sale of exosomes and conditioned mediums, from March 1, 2020 through present date. | No objection. |
| 56. Exocel's future annual projected sales, revenues, expenses, and profits that will result from its sale of exosomes and conditioned mediums for the next five years. | No objection. |
| 57. The Exocel employees that created, and helped create, Exocel's exosomes and conditioned mediums. | No objection. |
| 58. The persons and entities that have an ownership interest in Exocel since March 1, 2020. | No objection. |
| 59. The substance and purpose of agreements Exocel entered with Jayashankar, Contreras, Hubers, and EpigeneticsRx relating to exosomes and conditioned mediums. | No objection. |

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| 60. The compensation Exocel paid to Jayashankar, Contreras, Hubers and EpigeneticsRx and the reasons for the compensation. | No objection. |
| 61. The facts regarding EpigeneticsRx's assignment of any intellectual property rights to Exocel regarding exosomes and conditioned mediums. | No objection. |
| 62. Identification of Exocel's past and present internal personnel and outside vendors used to test its exosomes and conditioned mediums. | No objection. |
| 63. Identification of the persons and entities Exocel provided its Process for manufacturing exosomes and conditioned mediums after Exocel's relationship with Cell Applications terminated. | No objection. |
| 64. Exocel's relationship with iXcell, Fibercell, Denovo Matrix, Everzom and Pennsylvania Biotech as it relates to exosomes and conditioned mediums. | No objection. |
| 65. For the entities identified in area of inquiry 64 (and as it relates to processes for manufacturing exosomes and conditioned mediums that are within the scope of the trade secret Processes as identified in Kimera's interrogatory answers), identify the services/products Exocel receives from those entities, the total compensation Exocel paid each entity, and the exosome related information (SOPs, protocols, and procedures) exchanged with those entities. | Overruled as to the general topics of (1) services and products provided to Exocel Bio by these entities and (2) exosome-related information exchanged between Exocel Bio and these entities.<br><br>Sustained as to compensation paid by Exocel Bio to each entity. This information is irrelevant and not proportional to the needs of the case. |
| 66. Identification of Exocel's top salesperson who made over $377,000 in 2023. | No objection. |

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| 67. How the information contained within patent application US 2023/0181646 Al was conceived, developed, tested, and memorialized | Overruled. |
| 68. How Exocel used and implemented the contents of patent application US 2023/0181646 Al to make exosomes and conditioned mediums. | Overruled |
| 69. The substance and purpose of any agreement Exocel entered regarding patent application number US 2023/0181646 Al including assignments and conveyances. | Sustained as seeking irrelevant information and as overbroad and not proportional to the needs of the case. |
| 70. The rights Exocel obtained to the information contained within patent application number US 2023/0181646 Al. | Sustained as seeking irrelevant information and as overbroad and not proportional to the needs of the case. |
| 71. The facts and circumstances relating to the transference of (1) exosomes manufactured by someone other than Exocel and subsequently conveyed to Exocel in 2019 and 2020 and (2) any Process (partial or complete) Exocel used to manufacture exosomes and conditioned mediums that Exocel did not create in 2019 and 2020. | Overruled. |
| 72. The tangible and intangible property EpigeneticsRx transferred to Exocel relating to the process Exocel uses to make exosomes and conditioned mediums and the reasons transference was made/accepted. | No objection. |
| 73. The relationship between Exocel and Helius Investments, the services Helius Investments provides Exocel, and the reasons Exocel paid Helius approximately $246,000 in 2021, $275,000, $344,548, and $329,000 in 2022, and $527,133 in 2023. | No objection. |

14

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| 74. The relationship between Exocel and Alpha PJR, the services Alpha PJR provides Exocel; and the reasons Exocel paid Alpha PJR $325,879 in 2021, $655,000 in 2022, and $275,975 in 2023. | No objection. |
| 75. The total amount of money Exocel spent defending itself in this litigation. | No objection. |
| 76. The amount of money Exocel spent defending and prosecuting other legal proceedings and the subject matters of those legal proceedings. | Sustained as seeking information that is irrelevant and not proportional to the needs of the case. |
| 77. Exocel's business relationship with the following persons as it relates to Exocel's initial creation of exosomes and the creation of a Process for manufacturing exosomes and conditioned mediums:<br><br>a. Aejaz Sayeed, PhD;<br>b. Dr. Roger Schechter;<br>c. Cell Applications;<br>d. Pennsylvania Biotech;<br>e. EpigeneticsRx;<br>f. Patrick Retif;<br>g. Philip Retif;<br>h. Nirupama Subramanian;<br>i. Alex Contreras, LATAM GM;<br>j. Christine Gavant;<br>k. Kelli Ferreri;<br>l. Institute for Specialized Medicine;<br>m.    Redner Integrative Health; and<br>n. Jillian Vogel. | Overruled. |
| 78. Information sufficient to show the documents Exocel produced in this Lawsuit | No objection. |

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| are authentic and part of Exocel's business records. | |
| 79. Information sufficient to show the documents Cell Applications produced in this Lawsuit that were sent to, or received by, Exocel are authentic and part of Exocel's business records. | No objection. |
| 80. The standard operating procedures (SOPs) Cell Applications created for, and provided to, Exocel that relate to Exocel's Process for manufacturing exosomes and conditioned mediums. | No objection. |
| 81. The SOPs persons and entities other than Cell Applications created for, and provided to, Exocel that relate to Exocel's Process for manufacturing exosomes and conditioned mediums. | No objection. |
| 82. The origins of the information Exocel provided to Cell Applications that was used to manufacture exosome products, manufacture conditioned mediums, and create SOPs for Exocel. | No objection. |
| 83. How Exocel developed its SOPs and SOPs Cell Applications developed for Exocel. | No objection. |
| 84. The expense, time, effort, research, experiments, and trial and error Exocel benefited from pre-incorporation, or undertook post-incorporation, concerning the development of the following aspects of Exocel's process for manufacturing exosomes and conditioned mediums that are within the scope of the Processes identified in Kimera's interrogatory answers for: | Sustained as seeking irrelevant information and as overbroad and not proportional to the needs of the case. |

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| a. Tissue receiving procedure; <br> b. The use of placental MSC cells and consideration of alternatives; <br> c. The use of purchased cell lines; <br> d. Determination of placental donor criteria; <br> e. Potential contamination of tissue; <br> f. Testing of human tissue; <br> g. Materials, equipment, inventory, parts, and reagents needed for the Process; <br> h. Vendors and suppliers used to source tissue, equipment, and reagents; <br> i. Vendors and suppliers used to conduct testing; <br> j. How to dissect placenta and which part to use; <br> k. Enzymatic digestion of the tissue; <br> l. The Process for placental MSC cell line generation and maintenance of cell phenotype; <br> m. The Process for initiating/re-initiating cell cultures; <br> n. The Process for seeding roller bottles and for cell expansion; <br> o. The Process of releasing dependency upon calf serum (weaning fetal bovine serum or FBS from the medium and the development of a xenofree process); <br> p. The Process of determining optimal reagents to use, such as optimal mix of basal media and cofactors to optimize cell growth; <br> q. The Process for accelerating secretion of exosomes into media and collectins to conditioned media; <br> r. The use of roller bottles and roller system and potential alternatives; <br> s. Surface preparation of roller bottles; <br> t. The process of optimizing cell growth and exosome production in roller flasks; | |

21-cv-2137-MMA-DDL

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| u.    The Process for harvesting exosomes;<br>v.    The Process for isolating and capturing exosomes and purifying exosomes;<br>w.    The process and desired level for adjusting the dose of exosomes (for example, protein concentration and particle number determination);<br>x.    The process for testing the therapeutic efficacy of the purified exosomes;<br>y.    Methods of quality control testing including the types of tests performed;<br>z.    The Process and methods for storage and determination of the stability of product;<br>aa.   The Process for aliquoting or transferring into vials;<br>bb.   The process for labeling;<br>cc.   The rules, regulations, and requirements needed to label vials;<br>dd.   The Process for sterility testing;<br>ee.   The Process for shipping, packaging, and tracking shipments;<br>ff.    The elements needed to ship and package the final product while maintaining efficacy;<br>gg.   Research and experimentation culminating in the amalgamation of Processes for the large-scale production of exosomes of proven therapeutic efficacy;<br>hh.   The use of a clean room and consideration of alternatives;<br>ii.    The incorporation of exosomes into product lines and potential product lines for the consumption or use by clinicians and their patients;<br>jj.    The sale of exosomes and exosome products, including production times, production rates, production volume, market demand, scalability, operating costs and profitability; | |

| Plaintiff's Rule 30(b)(6) Topic | Court's Ruling |
|---|---|
| kk.  Marketing and sales strategies;<br>ll.    Product pricing;<br>mm. The Process for characterizations of exosomes including the types of characterization performed and the vendor who performed each;<br>nn.  The Process to ensure that the final exosomes preparation is suitable for clinical application and to determine its useful shelf life; and<br>oo.  The creation of SOPs to document Exocel's exosome processes;<br>pp.  The methods used to develop a customer list; and<br>qq.  Production times, rates, and volumes, market demand, scalability regulatory compliance, sufficiency of office staff to operate the business; operating costs and profitability. | |
| 85.  The methods Exocel takes to prevent its Process for manufacturing exosomes, its Process for manufacturing conditioned mediums, and its customer lists from disclosure. | No objection. |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.

### <u>CONCLUSION</u>

The Rule 30(b)(6) deposition of Exocel Bio shall proceed in accordance with this Order.

**IT IS SO ORDERED.**

Dated:  August 13, 2024

_____

Hon. David D. Leshner
United States Magistrate Judge

21-cv-2137-MMA-DDL